IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

_____

| | |
|---|---|
| PHARMASTEM THERAPEUTICS, INC., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 8:04-CV-1740-T-30TGW |
| v. | ) |
| | ) |
| CRYO-CELL INTERNATIONAL, INC., and | ) |
| BRUCE ZAFRAN, M.D. | ) |
| | ) |
| Defendants. | ) |

_____

**DEFENDANT CRYO-CELL'S MEMORANDUM OF LAW IN
OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS**

INTRODUCTION

Defendant Cryo-Cell International, Inc. ("Cryo-Cell") respectfully requests this Court to deny Plaintiff PharmaStem Therapeutics, Inc.'s ("PharmaStem's") Motion to Dismiss Cryo-Cell's counterclaims. Cryo-Cell's counterclaims represent a current controversy between Cryo-Cell and PharmaStem, and are therefore ripe for consideration by this Court. Each one of Cryo-Cell's counterclaims is fully supported by the pleadings and sufficiently puts PharmaStem on notice of the claims against it and the material facts supporting those claims.

PharmaStem has improperly attempted to show that Cryo-Cell will not prevail after trial on any of its claims. It has not shown that the pleadings of Cyro-Cell are insufficient to survive a motion to dismiss for failure to state a claim. Accordingly, PharmaStem's motion must be denied.

{TP157458;1}

## STATEMENT OF FACTS

PharmaStem is the purported owner of U.S. Patents 5,004,681 ("the '681 Patent"), 5,192,553 ("the '553 Patent"), 6,461,645 ("the '645 Patent"), 6,569,427 ("the '427 Patent") and 6,605,275 ("the '275 Patent"). *See* Defendants Joint Answer and Counterclaim, ¶ 7 (hereinafter "Cryo-Cell Counterclaim"). In February 2002, PharmaStem filed suit in the United States District Court for the District of Delaware against Cryo-Cell and several other companies, alleging infringement of the '681 and '553 patents. ("the Delaware Action"). *Id.* ¶ 8.

After a jury trial in the Delaware Action, a verdict was entered in favor of PharmaStem and against Cryo-Cell and the other companies, finding the patents valid and infringed, awarding damages to PharmaStem. *Id.* at ¶ 9. Post trial motions were timely filed, including a motion by PharmaStem for entry of a permanent injunction and motions by Cryo-Cell and the other defendants for judgment as a matter of law or for a new trial. *Id.* at ¶ 10. On September 15, 2004, a Memorandum Opinion was issued in the Delaware Action finding in favor of Cryo-Cell and the other defendants on the claim of infringement of the '553 Patent, and granting their motion for a new trial on the issue of infringement and damages with respect to the '681 Patent. *See* Memorandum Opinion, *Pharmastem Therapeutics, Inc. v. ViaCell, Inc.,* No. 02-148-GMS, 2004 WL 2127192 (D. Del.), attached hereto as Exhibit 1.

Starting June 1, 2004, PharmaStem sent to approximately 25,000 obstetricians and hospitals letters containing false and misleading statements including, but not limited to, the following:

> Patent infringement occurs when a person or institution practices all or part of a patented process. In the case of umbilical cord blood collection by an obstetrician, the Court ruled that infringement occurs even if the cryopreservation and storage is performed by a third party.

*See* Cryo-Cell Counterclaim, ¶¶ 11 and 12.  The District Court of Delaware, the Hon. Gregory M. Sleet, upon being notified of PharmaStem's actions, issued an Order for Injunctive Relief on July 2, 2004 in response to a motion filed by Cryo-Cell and the other defendants in the Delaware Action, finding that "PharmaStem's June 1, 2004 letter to Obstetricians ("the PharmaStem Letter") contains false and misleading statements concerning the Court's rulings to date."  *Id*. at ¶ 14.  Judge Sleet, who presided over the Delaware Action, particularly found that the following statement in the PharmaStem Letter was false and misleading: "Patent infringement occurs when a person or institute practices all or part of a patented process."  The Order for Injunctive Relief further states "[t]he Court finds this statement is misleading because it is black letter law that in order to prove contributory infringement of a method patent, the entire patented process must be performed.  By suggesting that infringement would occur when only part of a process is performed, the letter is misleading."  *Id*. at ¶ 15.  The Court continued:

> [T]he Court finds this statement misleading for at least the following reasons.  First, the sentence state that 'the Court ruled' with respect to the 'case' of 'umbilical cord blood collection by an Obstetrician.'  This Court never made any rulings regarding conduct by obstetricians.  There were no such allegations advanced in the trial of this matter.  Second, the sentence leaves out several important elements that must be proved to show contributory infringement.  This missing elements include:
>
> (1)  that there must be a sale or offer to sell by the party that is accused of contributory infringement,
>
> (2)  that the party accused of contributory infringement must be 'acting in concert or working together' with the other parties whose combined conduct performed each and every element of the patented process, and
>
> (3)  that, under [35 U.S.C.] § 271(c), a sale of a service, as opposed to a sale of a tangible physical object, is not sufficient to satisfy the requirements of the contributory infringement statute.

> The Court finds that without these elements, the statement is misleading.

*Id*. at ¶ 16.  As a result of his findings, Judge Sleet ordered PharmaStem not to make any further false and misleading communications to obstetricians.  *Id*. at ¶ 17.

In spite of Judge Sleet's order, PharamStem, after filing a separate infringement action against Cryo-Cell, disseminated a press release (the "Press Release") that contained similar false and misleading statements as those found to be false and misleading by Judge Sleet.  *Id*. at ¶18.  Again, on August 20, 2004, PharmaStem sent another letter and an amnesty agreement to obstetricians (the "Amnesty Agreement") that contained similar false and misleading statements.  PharmaStem insisted that the obstetricians sign the Amnesty Agreement to avoid legal action by PharmaStem, and that the obstetrician only work with PharmaStem's licensees.  In disregard of the findings and order of the Delaware District Court, the letter of August 20, 2004 states the following: "It is PharmaStem's position, as asserted in the recent lawsuits, that obstetricians are liable for patent infringement if they collect cord blood or market services for unlicensed cord blood banks."  *Id*. at ¶ 20.  The Press Release and August 20, 2004 letter failed to correct the earlier misrepresentations, failed to disclose the inaccuracy of the earlier misrepresentations, and failed to disclose the rulings of the Delaware District Court.  *Id*. at ¶ 20.

Still further in disregard of Judge Sleet's findings, PharmaStem has sponsored links on such internet sites as Google.com and Yahoo.com in which PharmaStem identifies Cryo-Cell, and claims that it is an "unlicensed bank," without reference to PharmaStem's purported patents, thereby misleading individuals to believe that Cryo-Cell was not a state licensed blood bank.  This is further compounded by the fact that the sponsored link further states, "Why Take The Risk?"  *Id*. at ¶ 22.

PharmaStem has issued these statements in bad faith, for the clear purpose of damaging Cyro-Cell's business by creating false implications of infringement and unlicensed business with the consuming public and obstetricians. *Id*. at ¶¶ 23 and 25. The PharmaStem Letter, Amnesty Agreement and Internet sites have had their intended damaging effect on Cryo-Cell. Physicians have refused to collect cord blood and patients have been prevented from using Cryo-Cell's services. *Id*. at ¶ 24.

In the present action, PharmaStem has filed a boilerplate infringement claim against Defendant Dr. Zafran and Cryo-Cell that PharmaStem knows is baseless, considering the jury instructions in the Delaware Action, and the findings of the Order for Injunctive Relief and the September 15, 2004 Order, each issued by the Delaware District Court.

Accordingly, Cryo-Cell's First through Fourth counterclaims are ripe for consideration and are plead sufficiently enough to survive PharmaStem's motion to dismiss.

## ARGUMENT

### A.     Cryo-Cell's Counterclaims Are Ripe For Consideration By This Court

In order to determine whether a claim is ripe for adjudication, a Court must "examine whether there is sufficient injury to meet Article III's requirement of a case or controversy, and if so, whether the claim is sufficiently mature, and the issues sufficiently defined and concrete to permit effective decision making by the court." *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1315 (11th Cir. 2000). In the present case, Cryo-Cell's counterclaims meet Article III's requirements.

The sufficiency of Cryo-Cell's injuries as a result of PharmaStem's action is clear and uncontroverted by PharmaStem. Cryo-Cell has lost, and continues to lose, business from current

and potential customers due to the false and misleading statements made by PharmaStem in letters sent to obstetricians, and published on websites relating to its patents.

PharmaStem, by continuing to disregard the specific findings of Judge Sleet regarding the false and misleading nature of PharmaStem's statements and the bringing of claims of infringement, have made the issues regarding Cryo-Cell's First through Fourth Counterclaims ripe for judicial decision.  PharmaStem's bringing of the present infringement action is itself partially determinative of the justiciability of Cryo-Cell's counterclaims.  Whether or not the Court ultimately finds that Cryo-Cell or Defendant Dr. Zafran infringe PharmaStem's '427 patent does not determine whether the counterclaims are sufficiently mature.  The claims made by Cryo-Cell are directly related to PharmaStem's misuse of the '427 patent, as well as its other patents, regardless of whether the patents are valid or infringed by Cryo-Cell.  This case itself provides an appropriate forum for litigating the issues that include Cryo-Cell's claims.

The Cryo-Cell counterclaims are sufficiently defined and concrete.  Cryo-Cell has not alleged any abstract claims.  As PharmaStem recognizes, similar claims have been brought in other patent infringement cases in this circuit as well as others.  *See e.g.*, *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340 (Fed. Cir. 1999); *Concrete Unlimited Inc. v. Cementcraft, Inc.*, 776 F.2d 1537 (Fed. Cir. 1985); *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1283 (S.D. Fla. 2001); and *Spotless Enterprises, Inc. et. al. v. Carlisle Plastics, Inc.*, 56 F. Supp. 2d 274 (E. D. N. Y. 1999).  The counterclaims relate directly to PharmaStem's misrepresentations to obstetricians and customers of Cryo-Cell, claims related to those heard by the District Court in Delaware, which enjoined PharmaStem from continuing to disseminate communications similar to those at issue in this case.

PharmaStem has erroneously relied on cases that are inapposite to the facts of the present case. *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta* and *Digital Properties, Inc. v. City of Plantation* each involve constitutional challenges to local ordinances and whether the court has jurisdiction to hear the case prior to the enforcement of the ordinance against the plaintiff. *See Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301 (11th Cir. 2000); and *Digital Properties, Inc. v. City of Plantation*, 121 F. 3d 586 (11th Cir. 1997). The factual posture of the present case is not at all similar. PharmaStem has attempted to enforce its patents against Cryo-Cell and against physicians who collect cord blood for Cryo-Cell's customers, making the issues presented by each counterclaim relevant and ripe for consideration.

Accordingly, Cryo-Cell's First through Fourth Counterclaims are ripe for consideration by this Court.

B.    Standard For A 12(b)(6) Motion

"To warrant dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must be clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Determining the propriety of granting a motion to dismiss requires courts to accept all factual allegations in the complaint as true and to evaluate all inferences derived from these facts in the light most favorable to the plaintiff. The threshold of sufficiency that a complaint must meet to survive a motion to dismiss is exceedingly low." *Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1283 (S.D. Fla. 2001); (citing *Ancata v. Prison Health, Inc.,* 769 F.2d 700, 703 (11th Cir. 1985)). *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Each of Cryo-Cell's Counterclaims meets this threshold.

### C.  Cryo-Cell Is Entitled To Offer Evidence To Support Its Counterclaims

The basis of PharmaStem's argument in support of its motion to dismiss is that the statements made by PharmaStem are "lawful" and "true." Also, PharmaStem argues that Cryo-Cell does not prove each element of each counterclaim. PharmaStem's argument, though, does not address the correct issue. "The issue is not whether the [counterclaim] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *In re K-Dur Antitrust Litigation*, No. 01-1652, 2004 U.S. Dist. LEXIS 19804, *25 (D. N. J. September 29, 2004). "Additionally, a plaintiff need not allege the existence of every element of his or her claim as long as the allegations plead facts sufficient to provide the defendant with fair notice of the transaction and to set forth the material points necessary to sustain recovery." *Id*. *See also Conley*, 355 U.S. at 47.

#### 1.  Cryo-Cell Has Sufficiently Plead Its Claim For Interference With Contractual and Business Relationships

PharmaStem attempts to argue that CorCell's tortious interference claim should be dismissed because PharmaStem will ultimately prevail, rather than focusing solely on the facts pleaded. PharmaStem's argument regarding its "seeking to vindicate those patent rights" is better made at a later time. On a motion to dismiss for failure to state a claim, the ultimate success of the claim is not the issue. The issue is whether CorCell has sufficiently plead the claim in its counterclaim, and CorCell has done so.

PharmaStem admits that Cyro-Cell has plead facts supporting the injuries Cryo-Cell has suffered and the existence of contractual and business relationships between Cryo-Cell and third parties, e.g., parents, obstetricians and health care providers. *See* PharmaStem's Motion to Dismiss and Memorandum of Law, Page 8. Whether or not Cyro-Cell ultimately establishes the necessary existence of the business and contractual relationships is an issue to be decided after

discovery.  As it relates to the present motion, Cryo-Cell, uncontroverted by PharmaStem, has sufficiently plead the existence of these relationships.  *See Id*. ("Cryo-Cell alleges the existence of a business relationship between itself and expectant parents, obstetricians and medical care providers.").  As PharmaStem admits, in paragraphs 27 through 29 of Cryo-Cell's Counterclaim, Cryo-Cell plead "contractual or other economic relationships with persons who desire, or who may desire, to purchase [Cyro-Cell's] services of cryopreservation and storage of umbilical cord blood, " Cryo-Cell's Counterclaim, ¶ 27, "contractual and business relationships with parents who were purchasing Cryo-Cell's services of cryopreservation and storage of their children's umbilical cord blood . . . " *Id*. at ¶ 28, and " contractual and business relationships with obstetricians and medical care providers who agreed to collect umbilical cord blood to be cryopreserved and stored by Cryo-Cell. *Id*. at ¶ 29.

PharmaStem knew of these relationships as well.  Cyro-Cell has plead that PharmaStem sent 25,000 obstetricians and hospitals letters similar to Exhibit A of Cryo-Cell's Counterclaim. *See* Cryo-Cell's Counterclaim, ¶ 11.  Cryo-Cell alleges that the "Delaware District court found that the PharmaStem Letter contained false and misleading statements." *Id*. at ¶14.  *See also Id*., Exhibit B and ¶¶ 15-17.

Further, Cryo-Cell plead that PharmaStem continued to send letters to obstetricians and hospitals that contained statements similar to those the Delaware District Court found false and misleading, thereby disregarding that court's findings.  *See Id*. at ¶¶ 18-20; and *Id*., Exhibits C and D.

Accordingly, PharmaStem's argument that Cryo-Cell has not alleged that PharmaStem knew of the existence of the relationship between Cryo-Cell and the third parties that received the communications from PharmaStem, and that PharmaStem intentionally and unjustifiably

interfered with these relationships is simply wrong.  Although Cryo-Cell is not required to allege the existence of every element of the claim, it is clear, accepting all of the plead facts as true, and evaluating all inferences derived from these facts in the light most favorable to Cryo-Cell, the bases upon which Cryo-Cell finds support for its claim, and the claim's elements.  This Court does not have to strain to infer that PharmaStem knew of the existence of a relationship between Cryo-Cell and obstetricians and hospitals.  As Cyro-Cell specifically pleads, PharmaStem communicated with obstetricians and hospitals that provide the service of collecting cord blood from patients.  *See Id*. at ¶¶ 11 – 25.  These communications specifically set forth that Cryo-Cell willfully infringed PharmaStem's patents, PharmaStem has brought further claims of infringement against Cryo-Cell and obstetricians that have relationships with Cryo-Cell, and that Cyro-Cell was not a licensed cord blood bank, without reference to PharmaStem's patents.  *See Id*., Exhibits A, C and D.  If PharmaStem was not aware of the relationships plead in Cryo-Cell's Counterclaim, PharmaStem would not have specifically mentioned Cyro-Cell in its communications.

    Further, PharmaStem's complete disregard of the Delaware District Court's findings demonstrates PharmaStem's intentional and unjustifiable interference.  *See Id*. at ¶¶ 14-17.  PharmaStem did not include any of the language that the Delaware District Court set forth in its Order.  *See Id*., Exhibit B.  These facts are clear indications of PharmaStem's knowledge regarding the existence of a relationship between Cryo-Cell and the third parties that received PharmaStem's communications, and the nature of the interference by PharmaStem in these relationships.

    The sufficiency of Cryo-Cell's plead facts as supporting its interference claim is clear, and the claim, therefore, should not be dismissed.

## 2. Cryo-Cell Has Sufficiently Plead Its §43(a) Lanham Act Claim

PharmaStem's argument regarding Cryo-Cell's claim of a Lanham Act violation is clearly without merit. The threshold question for the court to decide is whether Cryo-Cell has alleged facts sufficient to put PharmaStem on notice of the material claims alleged, not whether Cryo-Cell will prevail on its claims. Contrary to Plaintiff's assertion, Cryo-Cell's counterclaim pleads each of the elements of a Lanham Act violation.

As set forth above, Cryo-Cell has plead that PharmaStem sent to 25,000 obstetricians and hospitals letters that the Delaware District Court found to contain false and misleading statements. *Id.* at ¶¶ 11 – 16. As a result of the Delaware court's findings, PharmaStem was ordered "not to make any further false or misleading communications to obstetricians. *Id.* at ¶ 17. Cyro-Cell further alleges that PharmaStem continued to make statements similar to those found to be false and misleading. See *Id*. at ¶¶ 18-20. Additionally, PharmaStem has specifically stated on links to Internet sites that Cryo-Cell is an "unlicensed blood bank," without making a direct reference to PharmaStem's patents. *Id*. at ¶ 22. The linked site went so far as to ask "Why Take the Risk?" *Id*.

PharmaStem's only answer is to claim, in substance, that its statements have not been misleading or false, but rather have either been true or opinion. Leaving aside the plain fact that this assertion involves issues of disputed fact, it ignores Judge Sleet's finding that at least of some of PharmaStem's statements have in fact been false and misleading. Cryo-Cell alleges, and will prove, that PharmaStem's statements have been intended to and have had precisely those effects.

While PharmaStem correctly states the law as protecting its right to make statements regarding patent liability where made in good faith, it ignores the allegations of bad faith

TP157458;1

11

contained in Cryo-Cell's counterclaims. Simply because none of the cases recently brought by PharmaStem have been resolved by final judgment, PharmaStem argues that its statement of its position cannot be false. To the contrary, where PharmaStem could not possibly have a good faith belief in the position it articulates, its statements cannot be protected and can be the subject of Lanham Act liability. PharmaStem's reliance on *General Cigar Holdings, Inc. v. Altaic, S.A.*, 205 F. Supp. 2d 1335 (S.D. Fla. 2002) is misplaced. PharmaStem has not merely stated its position on a possible future event, but rather has made statements on the present state of legal liability, and false statements at that. The facts as plead demonstrate that PharmaStem's statements, already found to be false and misleading by a federal court, were meant to dissuade third parties from using the services of Cryo-Cell in violation of § 43(a) of the Lanham Act. *See Vogue Ring Creations, Inc. v. Hardman*, 410 F.Supp. 609 (D.R.I. 1976). The cases relied upon by PharmaStem in this portion of its argument are summary judgment cases, *e.g.*, *Golan v. Pingel Enterprise, Inc.*, 310 F.3d 1360, 1370-71 (Fed. Cir. 2002); *Zenith Elecs. Corp v. Exzec, Inc.*, 182 F.3d 1340, 1353 (Fed. Cir. 1999), not cases decided under Rule 12(b)(6), and thus are entirely inapposite.

  PharmaStem's remaining argument again attempts to argue a point not at issue at this time. Cyro-Cell has not only specifically plead that PharmaStem acted in bad faith, but has plead sufficient facts to support an inference of PharmaStem's bad faith.

  Accordingly, Cryo-Cell has sufficiently plead its § 43(a) Lanham Act claim.

   **3.**  **<u>Cryo-Cell Has Sufficiently Plead Its Patent Misuse Claim</u>**

  PharmaStem does not argue that Cryo-Cell has not plead facts sufficient to support its claims of patent misuse. Instead, PharmaStem has argued that it did not misuse its patent rights.

Once again, Pharmastem's arguments on the merits is premature and does not address the proper standard for a motion to dismiss.

As noted above, Cryo-Cell has plead that PharmaStem has no basis for asserting that an obstetrician or medical care provider is liable under the claims of either the '427 patent. The Delaware District Court specifically stated that "it is black letter law that in order to prove contributory infringement of a method patent, the entire patented process must be performed." Cyro-Cell Counterclaim, ¶ 15. In spite of the court's finding, PharmaStem has asserted patent claims against obstetricians and medical care providers that do not cover accused products, processes, or activities, and in particular do not cover the collection of umbilical cord blood . . .." *Id.* at ¶ 41.

Cryo-Cell's pleadings clearly demonstrate that the dissemination of false and misleading communications and the filing of baseless infringement suits, is an attempt by PharmaStem to block Cryo-Cell from competing in the market, a knowing and aniticompetitive misuse of its patents. *Id.* at ¶ 42.

Accordingly, Cryo-Cell's patent misuse claim should not be dismissed.

    **4.**    **Cryo-Cell Has Sufficiently Plead Its Deceptive And Unfair Trade Practices Claim**

Cryo-Cell, as argued above, has plead facts demonstrating PharmaStem's attempts to deceive third parties having current and potential business and contractual relationships with Cryo-Cell though the making of statements found to be false and misleading by the Delaware District Court, and filing infringement actions for acts known to be outside the scope of PharmaStem's patents.

The facts plead by Cryo-Cell support its claims of deceptive and unfair trade competition. *See Del Monte Fresh Produce Co. v. Dole Food Co., Inc.*, 136 F. Supp. 2d 1271, 1283 (S.D. Fla. 2001).

### D.     This Court Should Consider Cryo-Cell's Counterclaims In This Action

PharmaStem's consideration of judicial economy is clearly disingenuous.  PharmaStem has filed numerous actions on the same patents at issue in this case, against numerous defendants that clearly do not infringe its patents, in numerous jurisdictions.[1]  Also, PharmaStem's reliance on the jurisdiction of the Delaware District Court is ironic considering PharmaStem's repeated disregard for that court's findings.

PharmaStem's assertion that Cryo-Cell infringes the '427 and '645 patents have made these counterclaims asserted by Cryo-Cell ripe for consideration in this Court.  Arguably, Cryo-Cell's counterclaims are compulsory, which makes the propriety of asserting them in this action clear.[2]  Even if they are not compulsory, PharmaStem's misuse of the patents on which it has sued in this case is the cause of Cryo-Cell's claims, and they are, therefore, directly at issue.

Moreover, the argument set forth in footnote 5 to PharmaStem's memorandum is frivolous.  The injunctive relief granted against PharmaStem on July 2, 2004 in the Delaware Action was temporary, not a final judgment, and did not relate directly to the '427 and '645

---

[1] CorCell, joined by all of the remaining defendants in all of PhramaStem's infringement actions, have filed a motion before the Judicial Panel on Multidistrict Litigation to transfer and coordinate this action, along with the other oactions concerning the PharmaStem patents, before Judge Sleet in the District of Delaware.  A copy of that motion will shortly be filed with this court, pursuant to the Rules of the JPML.

[2]   Indeed, PharmaStem has argued in the latest-filed Delaware action, *ViaCell, Inc., Cryo-Cell International, Inc, and CorCell, Inc. v. PharmaStem Therapeutics, Inc.,* No. 04-1335 GMS (D. Del.), and in its parallel case on the '645 and '427 patents against ViaCell in the District of Massachusetts, *PharmaStem Therapeutics, Inc, v. ViaCell, Inc., et al.,* No. 04-CV-11673 RWZ (D. Mass.), that claims based upon the same set of facts that support Cryo-Cell's counterclaims here could <u>not</u> properly be brought in Delaware, but are compulsory counterclaims that must be brought in Massachusetts.

patents that are at issue here. Thus there is no basis for arguing that Cryo-Cell's claims here are barred by res judicata.

Therefore, this Court should consider Cryo-Cell's counterclaims. If the Court grants PharmaStem's motion to dismiss on this discretionary ground, or on the ground of a lack of justiciable controversy, it must be without prejudice. Alternatively, if the Court should view Cryo-Cell's pleadings of any of its counterclaims to be deficient, leave to amend should be granted.

## CONCLUSION

For all the foregoing reasons, Defendant Cryo-Cell respectfully requests that the Court deny PharmaStem's Motion to Dismiss.

Respectfully submitted,

AKERMAN SENTERFITT

  /s/ Charles F. Ketchey, Jr.
Joseph W. Bain, Esq.
Florida Bar No. 860360
222 Lakeview Avenue, Suite 400
West Palm Beach, Florida 33401-6147
Telephone:    (561) 653-5000
Facsimile:    (561) 653-5333

and

Charles F. Ketchey, Jr., Esq.
Florida Bar No. 181735
Akerman Senterfitt
Post Office Box 3273
Tampa, Florida 33601-3273

Attorneys for Cryo-Cell International, Inc. and Brian Zafran, M.D.

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true and correct copy of the foregoing Defendant Cryo-Cell's Memorandum of Law in Opposition to Plaintiff's Motion to Dismiss has been furnished to Charles A. Carlson, Esq., Barnett, Bolt, Kirkwood, Long & McBride, Post Office Box 3287, Tampa, Florida 33601 and Paul Andre, Esq., Perkins Coie LLP, 101 Jefferson Drive, Menlo Park, CA 94025, via regular U.S. Mail on this 28th day of October, 2004.

                                        /s/ Charles F. Ketchey, Jr.
                                        Attorney